THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:08-CV-305-FL

| | |
|---|---|
| MARTHA MCLAMB, )<br> )<br>Plaintiff/Claimant, )<br> )<br>v. )<br> )<br>MICHAEL J. ASTRUE, Commissioner )<br>of Social Security, )<br> )<br>Defendant. ) | **MEMORANDUM AND<br>RECOMMENDATION** |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Martha McLamb ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for DIB on 1 August 2003, alleging disability beginning 23 April 2003. (R. 65-67). Her claim was denied initially and upon reconsideration. (R. 43, 46, 49-52, 55-57). A hearing before the Administrative Law Judge ("ALJ") was held on 21 February 2006, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 274-310). On 21 June 2006, the ALJ issued a decision denying Claimant's request for benefits. (R. 16-24). On 6 June 2008, the Appeals Council denied Claimant's request

for review. (R. 5-8). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

In its consideration of the final agency determination, this Court must remain mindful of the standard by which it reviews the administrative decision. *See e.g., Evans* v. *Eaton Corp. Long Term Disability Plan,* 514 F.3d 315, 320-21 (4th Cir. 2008) (citations omitted) (explaining standards of review are an expression of judicial restraint safeguarding the "superior vantage points of those entrusted with primary decisional responsibility."). The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood,* 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws,* 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ

2

analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

3

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of Claimant's mental impairment; (2) improper analysis of whether Claimant's impairments meet or equal one of the Listings; (3) improper assessment of Claimant's credibility; and (4) improper assessment of Claimant's residual functional capacity ("RFC").[1] Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 5, 7, 9. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 20). Next, the ALJ determined Claimant had the following severe impairments: (1) bipolar disorder; (2) history of carpel tunnel syndrome and tenosynovitis; and (3) diabetes mellitus. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21). In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found as follows: "The claimant had mild limitations in her activities of

---

[1] Claimant alleges two additional errors by the ALJ under the heading "No substantial evidence." *See* Pl.'s Mem. at 13. First, Claimant contends that the ALJ disregarded the opinion of a treating medical provider (identified as Dr. Mosee), citing pages 179-182 of the administrative record. However, page 179 is part of a mental RFC and pages 180-182 are part of a psychiatric review technique form ("PRTF"). Moroever, Dr. Mosee's name does not appear on the list of treating physicians completed by Claimant. (R. 79). Second, Claimant faults the ALJ for his treatment of Claimant's depression; yet, her discussion focuses solely on the ALJ finding "a sedentary RFC and no mental impairment" while "[Disability Determination Services ("DDS")] found light RFC and mild mental impairment." *See* Pl's Mem. at 14. Nonetheless, both the ALJ and DDS recognized Claimant's history of bipolar disorder and both found Claimant capable of performing light work. (R. 20, 47, 145, 178, 183).

4

daily living and social functioning. She had moderate limitations in maintaining concentration, persistence and pace. She had no recent history of decompensation. There was no evidence of "C" criteria." *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] that is simple, routine and repetitive in nature and does not require continuous repetitive motions with her hands. (R. 21). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 22). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a waitress, receptionist and transcriber. (R. 22). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 23).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 49 years old and employed part-time as a waitress for Waffle House. (R. 281). Claimant is a high school graduate with some technical college training. (R. 280). Claimant's past work experience includes working as a receptionist and a transcriber. (R. 283).

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

Claimant testified that she is unable to work full-time due to bipolar disorder, carpal tunnel syndrome and diabetes. Claimant takes medication for bipolar disorder but continues to experience suicidal thoughts. (R. 285). In 2000, Claimant was hospitalized at a mental health facility after experiencing a breakdown at work. (R. 290). Claimant returned to the facility several times for "day visits" and subsequently was referred to her county's mental health department where she attended weekly sessions with a therapist. *Id.*

As a result of diabetes, Claimant adheres to a strict diet and takes medication as directed. Nonetheless, she experiences dizziness at least twice a week as a result of fluctuations in her sugar level. (R. 285-86). Claimant stated her carpal tunnel syndrome, for which she has undergone wrist injections, is under control as long as she does not perform repetitive motions. (R. 283, 286). Claimant stated further that she experiences pain in her wrists and hands if she performs strenuous activities, such as housework. (R. 286). Claimant explained weight gain and drowsiness are side effects of her medications. (R. 281, 284).

Claimant explained she is unable to work full-time due to sleepiness caused by her medications and because she needs to give her hands a break from activity. (R. 284, 287). Claimant works a seven-hour shift three days a week. (R. 284, 291). Her job requires carrying no more than five pounds and covering an area no more than six feet in length. (R. 282, 294). Moreover, Claimant works the slowest shift, seeing an average of ten customers in a shift. (R. 297). When she is not working, Claimant spends the majority of her time sleeping. (R. 291). Claimant relies upon her daughters to perform household chores and to assist Claimant with shopping. (R. 292-93). Claimant stated she is able to drive to work (a five minute drive) but is

6

Case 5:08-cv-00305-FL   Document 22   Filed 03/11/09   Page 6 of 19

not able to drive "in hectic places." (R. 292, 299). Claimant engages in no social activities. (R. 300).

## III. Vocational Expert's Testimony at the Administrative Hearing

Stephen Carpenter, Certified Rehabilitation Counselor, testified as a VE at the administrative hearing. (R. 60-64, 302-07). After the VE's testimony regarding Claimant's past work experience (R. 304-05), the ALJ posed the following hypothetical:

> [A]ssume a hypothetical person of the same age, education and past work of the claimant...confined to light work...she could use her hands on a frequent basis, but not continuous; ...her work would be confined to simple, repetitive tasks. Assuming that type of a profile, would she be able to do any of her past work; or, it not, would there be other jobs that a person wit h those restrictions could perform?

(R. 305). With respect to past work, the VE responded that Claimant could perform the waitress position only. *Id.* As for other work, the VE testified that the individual could perform the following non-production jobs at the light, unskilled level: (1) photocopying machine operator - DOT #207.685-014; SVP 2; (2) inserting machine operator - DOT #208.685-018; SVP 2; and (3) office helper - DOT #239.567-010; SVP 2. (R. 306). With respect to each of these three positions, the VE stated there are more than 2,000 positions locally and 200,000 nationally. *Id.* The ALJ then asked the VE to assume

> that [Claimant's] testimony has been completely credible, and she has all the impairments to which she has testified, and they are as severe as she has testified. She indicated, for example, that she was unable to do her housework, and...needed help from a daughter; and she indicated that, aside from the time when she's up, she's...very fatigued. She indicated that...when she wasn't working or getting prepared to work,...she tended to sleep. Assuming that her testimony is credible, would there be jobs under that type of scenario?

(R. 307). The VE responded in the negative. *Id.* In response to questioning from Claimant's counsel, the VE testified the identified jobs could be performed with frequent use of Claimant's

7

hands but would not accommodate a limitation of occasional use only. (R. 307). *Id.* The VE testified further that the above jobs would not accommodate a person who needed to alternate between resting one day and working the next. *Id.*

## DISCUSSION

### I. The ALJ properly evaluated Claimant's mental impairment in accordance with 20 C.F.R. § 404.1520a.

Claimant contends the ALJ's evaluation of Claimant's mental impairment did not adequately follow the requirements of 20 C.F.R. § 404.1520a. *See* Pl.'s Mem. at 5. This Court disagrees.

In cases where a claimant presents evidence that she suffers from mental impairments, regulations prescribe a "special technique" that the ALJ must follow. *See* 20 C.F.R. § 404.1520a(b)-(c). In particular, upon determining that a claimant has medically determinable mental impairments, the ALJ must rate the degree of a claimant's functional limitation resulting from said impairments in four broad areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked and extreme. *Id.* § 404.1520a(c)(4). A four-point scale is used to rate the fourth functional area: none, one or two, three, and four or more. *Id.* The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.* The ALJ's decision must document application of the special technique and in particular, "show the significant history, including examination and laboratory findings, and the functional limitations that were considered in

8

reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(2).

The ALJ evaluated correctly Claimant's mental status and followed the specific guidelines required. As conceded by Claimant, the ALJ properly listed the four criteria necessary to evaluate a mental impairment pursuant to 20 C.F.R. § 404.1520a(c)(3). *See* Pl.'s Mem. at 6. In particular, the ALJ explained that Claimant has "mild limitations in her activities of daily living and social functioning," "moderate limitations in maintaining concentration, persistence, and pace," and "no recent history of decompensation." (R. 21).

Also, the ALJ provided "significant history," including medical findings, in his decision pursuant to 20 C.F.R. § 404.1520a(e)(2). The ALJ's decision provides a summary of findings and observations by doctors with the Johnston County Mental Health Center spanning from February 2001 to January 2006. (R. 20, 146-67, 246-50, 265-66). In particular, the ALJ noted the following: (1) Claimant's history of bipolar disorder since October 2000 (R. 116); (2) the need for psychotherapy following a suicide attempt in the fall of 2000 (R. 118); (3) medications taken, adjustments thereof due to either financial concerns or her responses to the medications and the supply of medications through the Patient Assistance Program (R. 146-49, 152-55, 157, 160, 165); (4) reports that Claimant was doing well without experiencing side effects related to her anti-depressant medication (R. 146, 246, 249, 266) and (5) an October 2005 psychiatric visit during which Claimant reported good sleep, energy and appetite (R. 246). (R. 20, 22). The ALJ noted also the opinions of the state agency psychological consultants who found Claimant capable of performing work that is simple, routine and repetitive in nature. (R. 22, 48, 178). For the foregoing reasons, Claimant's argument on this issue is without merit.

9

## II. The ALJ properly considered whether Claimant's impairments in combination are equivalent to a listed impairment.

Claimant argues that the ALJ improperly considered whether her impairments in combination are severe enough to equal the requirements of Listing. *See* Pl.'s Mem. at 6. In particular, Claimant contends "[w]hile [the ALJ's] decision states that [Claimant's] impairments, singly or in combination do not meet a listing, [it] does not make any attempt to consider the combination. Rather, the ALJ simply makes the conclusory statement that they do not."[3] This Court disagrees.

To be disabled under the Listings, the claimant may present evidence either that the impairment meets or is "medically equivalent" to a listed impairment. *See Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir.1986); *see also* 20 C.F.R. § 404.1526. "For a claimant to qualify for benefits by showing that h[er]...combination of impairments is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The [ALJ]...is responsible for deciding...whether a [L]isting is met or equaled." Soc. Sec. Rul. 96-69, 1996 WL 374180, at *3. In order to determine whether a medical impairment equals a Listing, the ALJ is bound to "consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding.... [The ALJ] also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c).

---

[3] Claimant contends further that the ALJ's decision "is full of...erroneous citations to the record for documenting whatever the ALJ wished to ultimately conclude." Pl.'s Mem. at 7. However, Claimant does not support this allegation with any references to the record and after careful and independent review, this Court finds the decision is supported by substantial evidence.

10

In this case, the ALJ specifically considered whether Claimant's impairments met or equaled Listing 12.04 (Affective disorders) and Listing 9.08 (Diabetes mellitus) and determined that they did not. (R. 21). The ALJ found also that "[n]o orthopedic or neurologic Listings are met or equaled with regard to her carpal tunnel syndrome and tenosynovitis." *Id.* The ALJ found further that Claimant's impairments, either singly or in combination, did not medically equal one of the Listings. *Id.* In making these findings, the ALJ considered all of the evidence in the record, including the opinions of the Disability Determination Service ("DDS") state agency medical and psychological consultants who provided opinions as to medical equivalence. (R. 22, 47, 180-93); *see* S.S.R. 96-6P, 1996 WL 374180, at *3. These opinions may be received into evidence by the ALJ as expert opinion evidence and given appropriate weight on the issue of whether a claimant's impairments equal a Listing. *See* S.S.R. 96-6p, 1996 WL 374180, at *3; *see also Dolan v. Barnhart*, 2005 WL 5865347, at *14 (S.D. W. Va. Dec. 7, 2005) (explaining findings on DDS forms supported the ALJ's finding that a Listing was not met or equaled). The Court notes further that Claimant has failed to identify which of the Listings she believes her impairments medically equal and does not support her impairments in combination argument with cited authority.

Based on the foregoing, it is evident that the ALJ did not arbitrarily make an independent determination as to whether Claimant's combination of impairments equaled a Listing. Rather, his determination was well-reasoned and supported by substantial evidence. The Court therefore rejects Claimant's challenge to the ALJ's finding that her impairments in combination do not equal a Listing.

11

## III. The ALJ properly assessed Claimant's credibility.

Claimant argues that the ALJ improperly evaluated her credibility, and in particular, her testimony concerning the disabling effects of her pain, fatigue, weakness and mental dysfunction. *See* Pl.'s Mem. at 10. This Court disagrees.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. § 404.1529(c)(1); S.S.R. 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. § 404.1529(c)(4); S.S.R. 96-7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 WL 374186, at *4; *see Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652 (D. Md. 1999). In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

(1) effect of symptoms on claimant's daily activities
(2) location, duration, frequency and intensity of the symptom(s)

12

(3) factors that precipitate or aggravate claimant's symptoms
(4) type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5) non-medical treatment received for relief of the symptom(s)
(6) any non-treatment measures used to relieve the symptom(s)
(7) other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). With respect to medical evidence, the ALJ summarized Claimant's medical visits for bipolar disorder, carpal tunnel syndrome and tenosynovitis and diabetes mellitus. (R. 20-22). The ALJ summarized further the findings of Gonzalo Fernandez, M.D., a state agency examining consultant, who observed that Claimant had good muscle bulk, tone and grip strength, can lift or carry 10 to 20 pounds frequently and sit, stand and walk 6 hours in an 8-hour day. *Id.* at 22; (R. 144-45).

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. § 404.1529(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following evidence in evaluating

13

Claimant's credibility: (1) Claimant's testimony as to daily activities, which includes sleeping whenever she is not working as a waitress, and her inability to perform household chores, such as vacuuming and dusting; (2) complaints of pain in her fingers and wrists and her poor memory; (3) exacerbation of her carpal tunnel syndrome whenever she performs household chores; (4) Claimant's complaints of drowsiness from her medications; and (5) an inability to lift more than two plates of food and carry them more than three to six feet. (R. 22).

Claimant relies on *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006) for her assertion that the ALJ erred in determining that Claimant's description of her pain, fatigue, weakness and mental dysfunction was unreliable because there was no objective medical evidence to support these complaints. *See* Pl.'s Mem. at 10. While the Court agrees with Claimant that *Hines* stands for the proposition that a claimant may rely exclusively on subjective complaints in some circumstances, the Court notes also that "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence." *Hines*, 453 F.3d at 565. In *Hines*, the claimant was allowed to exclusively rely on subjective evidence of pain because the court specifically acknowledged that it was impossible for someone afflicted with sickle cell disease to demonstrate pain objectively. *Id.* at 562 and 565. Further, the ALJ in *Hines* disregarded the treating physician's opinion that claimant was fully disabled, despite the physician's seventeen-year treatment relationship with the claimant. *Id.* at 567. In the case at bar, unlike in *Hines*, there is evidence in the record that contradicts Claimant's subjective complaints. For example, as discussed in detail above, the medical records indicate that Claimant was doing well without experiencing side effects related

14

to her anti-depressant medication (R. 146, 246, 249, 266) and that Claimant reported good energy. (R. 246). As the ALJ noted, Claimant did not complain to any physicians that her medications caused drowsiness. (R. 22). Moreover, no opinion by a treating or examining physician as to Claimant's functional abilities appears in the record. *See* (R. 22) (explaining "[n]one of the claimant's physicians have rendered any opinions that she is unable to perform work activity"). Consequently, *Hines* is not persuasive in the present context.

It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). To the extent that the ALJ detailed the relevant facts underlying his finding that Claimant's testimony was not fully credible, his credibility finding is entitled to substantial deference. *See Shively*, 739 F.2d at 989. Here, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this Court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176. For the foregoing reasons, Claimant's argument as to this issue is without merit.

IV.   **The ALJ's RFC assessment is supported by substantial evidence.**

Claimant contends the ALJ failed to evaluate the cumulative effect of her impairments, including her obesity and hand and arm problems, on her ability to work. *See* Pl.'s Mem. at 5, 7-9. This Court disagrees.

15

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his or her physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the case record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see also Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.").

Claimant's argument regarding the ALJ's alleged failure to consider the cumulative effects of her impairments merits little discussion, as "[s]ufficient consideration of the combined effects of a [claimant's] impairments is shown when *each is separately discussed in the ALJ's decision*, including discussion of a [claimant's] complaints of pain and level of daily activities." *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (emphasis added) (citations omitted), *aff'd* 179 Fed. Appx. 167 (4th Cir. 2006) (unpublished per curiam). Here, the ALJ acknowledged Claimant's treatment for bipolar disorder, diabetes mellitus, tenosynovitis and carpal tunnel syndrome. (R. 20-22). While the ALJ described the evidence as to each impairment separately, his decision indicates that he considered all of Claimant's mental and physical limitations in totality before determining Claimant maintained the RFC to perform light work.

16

Next, Claimant faults the ALJ for not assessing the effect of Claimant's obesity on her ability to function physically or mentally. *See* Pl.'s Mem. at 8. Claimant provides no discussion in support of this issue with the exception of her testimony as to a fifty-pound weight gain. *See* Pl.'s Mem. at 9. The ALJ has a duty to evaluate the intensity and persistence of a claimant's symptoms. *See* 20 C.F.R. § 404.1529(c). However, that duty does not extend to conjecture as to what the impact of those symptoms may be. Rather, the claimant has the burden of furnishing evidence supporting the existence of a condition and the effect of that condition on her ability to work on a sustained basis. *See* 20 C.F.R. 404.1512(c) and 20 C.F.R. 404.1545(a)(3); *see also Pass*, 65 F.3d at 1203. Yet, Claimant has failed to do more than suggest that the ALJ should have speculated as to how her obesity has impaired her ability to work. S.S.R. 02-01p, however, prohibits the ALJ from engaging in such guesswork:

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. *We will evaluate each case based on the information in the case record.*

S.S.R. 02-01p, 2000 WL 628049, at *6 (emphasis added).

As S.S.R. 02-1p makes clear, it is not the mere presence of an impairment such as obesity which determines disability, but rather the effect the impairment has on the ability of the claimant to function and perform work-related tasks. In this case, Claimant alleges no facts and points to no evidence in the record to support her position that her obesity places significant limitations on her ability to work. In fact, the objective medical evidence of record does not include a diagnosis of obesity or clinical notes or other medical records showing consistently high body weight or body mass index. (R. 145); *see* S.S.R. 02-1p, 2000 WL 628049, at *2

17

("When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity."). Because Claimant never raised obesity as an impairment and because the record does not support a finding that Claimant's weight, combined with her other impairments, rendered her disabled, Claimant's argument as to this issue is therefore without merit.

Claimant also faults the ALJ's assessment of Claimant's carpal tunnel syndrome. To the contrary, the ALJ noted that during Claimant's consultative examination with Dr. Fernandez, Claimant reported her carpal tunnel syndrome had resolved after she quit typing. (R. 21, 144). Indeed, Claimant reported that she had not experienced pain in her left wrist and fingers since she stopped working as a typist and that she no longer wears splints since she has been pain free. (R. 144). Accordingly, the ALJ limited Claimant to work that did not involve continuous and repetitive motions with her hands. (R. 21).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Moreover, the ALJ's RFC determination finds accord with the opinions of state agency consultants and no objective medical evidence from Claimant's treating physicians contradicts the ALJ's recommendation. Accordingly, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 11th day of March, 2009.

Robert B. Jones, Jr.
United States Magistrate Judge